IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOHN DOE,

        Plaintiff,

v.                                      CIVIL ACTION NO. 2:22-cv-00328

BILL CROUCH, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are several procedural motions filed by the *pro se* Plaintiff John Doe ("S.U."), [ECF Nos. 3, 4, 5, 22], and a motion to dismiss filed by Defendants, [ECF Nos. 15, 18]. This case is the most recent chapter in an ongoing saga of litigation related to the custody and parentage of S.U.'s three minor children. Undeterred by the series of adverse rulings against him, S.U. initiated the instant action in a roundabout attempt to challenge issues previously decided by the West Virginia courts. For the reasons explained below, this case is **DISMISSED**, and the pending motions are **DENIED as moot**.

I.    Background

Plaintiff S.U. is "legally known to be male" and has "physical traits of a male"; however, he "also ha[s] ovarian tissue."[1] [ECF No. 1, ¶ 8]. Using S.U.'s ova and the

---

[1] S.U.'s gender is neither the subject matter of the instant litigation nor of this opinion.

sperm of an anonymous donor, three embryos were created in a laboratory setting through the process of in vitro fertilization. *Id.* ¶¶ 12–14. Those embryos were then implanted into the uterus of C.J., who carried the three children—first a singleton and then a set of twins—in two separate pregnancies. *Id.* ¶¶ 14–15.

The proper characterization of S.U. and C.J.'s relationship is contentious. Previously, S.U. claimed that C.J. was merely his roommate. *S.U. v. C.J.*, No. 18-0566, 2019 WL 5692550, at *4 (W. Va. Nov. 4, 2019). His story later changed, and for a period of time, he described C.J. as an in-home babysitter for the children. *Id.* In his current Complaint, S.U. contends that C.J. was a "biological stranger acting as a gestational surrogate" for him. [ECF No. 1, ¶ 12]. The Supreme Court of Appeals of West Virginia, however, has explained that S.U. and C.J. "were in a relationship for approximately twelve years," during which time the children were conceived. *S.U.*, 2019 WL 5692550, at *1. In any event, C.J. has cared for the children since their births. *Jenkins v. Upton*, No. 1:22-cv-3, 2022 WL 8316814, at *1 n.1 (N.D. W. Va. Mar. 18, 2022), *report and recommendation adopted*, 2022 WL 4594483 (N.D. W. Va. Sept. 30, 2022). It is undisputed, however, that C.J. is not the children's biological mother and that the children's biological parents are S.U. (biological mother) and an anonymous sperm donor (biological father). *S.U.*, 2019 WL 5692550, at *2.

Shortly before C.J. gave birth to the twins, S.U. filed a Petition for Declaration of Parentage in the Circuit Court of Kanawha County "in an attempt to prevent [C.J.'s] name from being listed on the twins' birth certificate[s]." *Id.* The circuit court

transferred the matter "to the Family Court of Mason County where the parties resided," and there, a custody battle ensued. *Id.* The family court concluded that C.J. had been the children's primary caregiver and that the children had "a close emotional bond to [her]." *Id.* at *3. The court determined that C.J. was not biologically related to the three children; however, it "applied the doctrine of psychological parent to find [that her] name should remain on the children's birth certificates." *Id.* The court further found that S.U. had been physically and mentally abusive toward C.J., which caused the children emotional stress. *Id.* The court therefore ordered S.U. to participate in counseling services and awarded C.J. sole legal and physical custody of the children. *Id.* at *1, *3. S.U. appealed the family court's rulings to the Supreme Court of Appeals of West Virginia, which affirmed the court's order. *Id.* at *5.

The family court's custody and parentage determination has led to a series of court filings by S.U. in multiple jurisdictions,[2] which this court takes judicial notice of herein. In November 2019, S.U. filed a petition "in the Circuit Court of Gilmer County seeking to have [C.J.] removed from the birth certificates of the . . . three . . . children and to have them returned to his custody." *S.U. v. C.J.*, No. 19-1181, 2021

---

[2] In fact, S.U.'s vexatious conduct started before the family court rendered a final decision on the issues of custody and parentage. *See S.U. v. C.J.*, No. 3:17-cv-02366, 2017 WL 3616642 (S.D. W. Va. July 28, 2017), *report and recommendation adopted*, 2017 WL 3612859 (S.D. W. Va. Aug. 22, 2017). On April 17, 2017, S.U. filed a complaint in this court following the family court's issuance of a temporary order "award[ing] primary custody of two of the children to C. J., as well as secondary custody of a third child." *Id.* at *1. The complaint asserted nine counts against C.J., including a claim for breach of contract, and requested relief in the form of an order granting S.U. immediate sole legal and physical custody of the three children and "corrected birth certificates removing C. J. as the parent" and changing the names of two of the children. *Id.* at *1–2. The court dismissed S.U.'s complaint for lack of subject matter jurisdiction over child custody disputes. *S.U.*, 2017 WL 3612859, at *1.

3

WL 365824, at *2 (W. Va. Feb. 2, 2021). The circuit court denied the petition. *Id.* It concluded that S.U. was attempting to overturn the Supreme Court of Appeals' decision and that *res judicata* precluded S.U. from relitigating issues previously decided by the family court. *Id.* S.U. appealed, and the Supreme Court of Appeals of West Virginia affirmed the circuit court's dismissal. *Id.* at *4.

On June 29, 2020, S.U. initiated a civil action in this court against Matthew Wickert—one of the named defendants in the instant case—in Mr. Wickert's official capacity as State Registrar for Vital Statistics. *S.U. v. Wickert*, No. 2:20-cv-00450 (S.D. W. Va. June 29, 2020), at ECF No. 1. The complaint asserted equal protection and substantive due process challenges. *Id.* S.U. sought the following relief: (1) a declaratory judgment stating that West Virginia Code § 16-5-10(e)—which creates a presumption that a woman who gives birth to a child is the child's mother—violates the Fourteenth Amendment to the United States Constitution; (2) an injunction enjoining the enforcement of § 16-5-10(e); (3) an order requiring Mr. Wickert to amend the children's birth certificates to include only S.U.'s name; (4) a declaration that all orders from the family court action were null and void; (5) an order permitting "law enforcement to assist [S.U.] with securing physical custody of his children"; and (6) other appropriate relief. *Id.* at 18–19. The Honorable John T. Copenhaver, Jr. dismissed the matter for lack of standing and lack of jurisdiction under the *Rooker-Feldman* doctrine.[3] *S.U. v. Wickert*, No. 2:20-cv-00450, 2021 WL 1153996, at *4, *6–

---

[3] The *Rooker-Feldman* doctrine is a jurisdictional rule that prohibits federal district courts from reviewing state court judgments. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v.*

4

9 (S.D. W. Va. Mar. 26, 2021), *aff'd per curiam as modified*, 2022 WL 34139 (4th Cir. Jan. 4, 2022).

On July 17, 2020, S.U. filed a complaint against C.J. in the United States District Court for the Northern District of West Virginia. *Roe v. Jenkins*, No. 1:20-cv-00140 (N.D. W. Va. July 17, 2020), at ECF No. 1. The complaint similarly asserted equal protection and due process violations. *Id.* S.U. requested that the court (1) enter a declaratory judgment stating that C.J. is not the legal parent of S.U.'s biological children; (2) issue an injunction enjoining C.J. from having the care and custody of the children; (3) issue a writ of habeas corpus or a temporary restraining order requiring C.J. to surrender the children to S.U.; (4) order C.J. to pay the fees and costs for all actions relating to the custody of the children; (5) order C.J. to pay damages for S.U.'s emotional distress; and (6) grant further relief as required by justice. *Id.* at 9. The court dismissed the action for lack of subject matter jurisdiction over custody disputes. *See Roe v. Jenkins*, No. 1:20-cv-00140, 2020 WL 9257057, at *3 (N.D. W. Va. Aug. 5, 2020), *report and recommendation adopted*, 2021 WL 1026524 (N.D. W. Va. Mar. 17, 2021).

In addition to filing the district court cases, S.U. also attempted to indirectly challenge the state court rulings by obtaining an adoption order from an out-of-state family court. On May 15, 2020, S.U. filed a petition for stepparent adoption in the Court of Common Pleas of Allegheny County, Pennsylvania, Orphans' Court

---

*Feldman*, 460 U.S. 462 (1983).

5

requesting that the court terminate C.J.'s parental rights and allow S.U.'s wife, C.U., to adopt the three children. *In re Adoption of L.U.*, No. 1353 WDA 2020, 2021 WL 1998454, at *1 (Pa. Super. Ct. May 19, 2021). The orphans' court took judicial notice of the decisions by the Family Court of Mason County and the Supreme Court of Appeals of West Virginia and dismissed the petition. *Id.* at *2. S.U. appealed, and the Superior Court of Pennsylvania affirmed the dismissal on May 19, 2021. *Id.* at *6.

Undeterred, S.U. initiated an adoption action in the Superior Court of the District of Columbia, Family Court Operations Division, Domestic Relations Branch ("D.C. family court"). *Jenkins*, 2022 WL 8316814, at *1. Based on false information provided by S.U. and C.U., the D.C. family court issued final decrees of adoption for the children to be adopted by C.U. and "authorized name changes for two of the children." *Id.* at *2. A month later, C.J. seemingly became aware of the adoption proceedings and "filed a petition for *ex parte* relief and [an] immediate hearing in the Circuit Court of Gilmer County, West Virginia." *Id.* The circuit court, following a hearing, entered an order temporarily enjoining S.U. and C.U. from taking the children. *Id.* On January 3, 2022, the same day the injunction was entered, C.J. moved to intervene in the adoption matter in D.C. family court. *Id.* The court granted her motion and set a hearing for January 27, 2022. *Id.* On January 10, 2022, prior to the D.C. family court hearing, S.U. and C.U. removed the Gilmer County action to the Northern District of West Virginia based on federal question jurisdiction. *Id.* In his complaint, S.U. requested that the adoption orders be given full faith and credit.

6

*Id.* Shortly thereafter, the D.C. family court vacated the adoption decrees and reinstated the children's names. *Id.* The court also set a hearing to address potential sanctions on S.U. and C.U. *Id.* Additionally, because the D.C. family court vacated its order, which had prompted C.J. to file the Gilmer County action, the federal district court dismissed the matter before it as moot. *Jenkins*, 2022 WL 4594483, at *1.

At some point following the conclusion of the Allegheny County action but before the end of the D.C. family court action, S.U. filed a petition in the Westmoreland County Orphans' Court in Greensburg, Pennsylvania to terminate C.J.'s parental rights to the three children. *In re Adoption of L.U.*, Nos. 428 WDA 2022, 1 WDA 2023, 2 WDA 2023, 2023 WL 118733, at *1 (Pa. Super. Ct. Jan. 6, 2023). The orphans' court dismissed the petition for lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. *Id.* As usual, S.U. appealed the order, which was affirmed by the Superior Court of Pennsylvania on January 6, 2023. *Id.* at *8. On March 6, 2023, the Supreme Court of Pennsylvania denied S.U.'s Petition for Allowance of Appeal. *In re Adoption of L.U.*, Nos. 16 WAL 2023, 17 WAL 2023, 18 WAL 2023, 2023 WL 2364274, at *1 (Pa. Mar. 6, 2023).[4]

---

[4] While this factual background cites numerous related cases, it does not include every case filed by S.U. concerning the custody and parentage of his children. *See, e.g.*, *In re Change of Name Regarding Minors*, No. 21-0258, 2022 WL 1556113, at *1 (W. Va. May 17, 2022) (appealing an order from the Circuit Court of Kanawha County, which "dismiss[ed] [S.U.'s] appeals from a family court order denying his motions to reinstate two petitions to change the names of his minor children"); *In re Adoption of E.U.*, No. 21-0165, 2022 WL 293352, at *1 (W. Va. Feb. 1, 2022) (appealing an order from the Circuit Court of Putnam County, denying S.U. and C.U.'s petition to allow C.U. to adopt the three children); *In re E.U.*, No. 20-0039, 2021 W. Va. LEXIS 523, at *1 (W. Va. Oct. 13, 2021) (appealing an order entered by the Circuit Court of Mason County on January 15, 2020, which denied S.U. and C.U.'s petition for adoption because C.J.'s consent was required).

Finally, on August 8, 2022, S.U. filed the instant Verified Complaint for Declaratory and Further Relief. [ECF No. 1]. He contends that the "Defendants' application of § 16-5-10(e)"—which creates a presumption that a woman who births a child is the child's mother, unless otherwise specified by statute or determined by a court prior to the filing of the birth certificate—"caused [his] children's birth certificates to recite incorrect maternity; incorrect paternity; and, incorrect legal names." *Id.* ¶ 18. He states that West Virginia Code § 16-5-10(a)'s requirement that a birth certificate be filed within seven days of live birth "did not permit [him] the opportunity to obtain DNA testing prior to the Defendants' filing and registration of [his] children's birth certificates." *Id.* ¶ 16. S.U. asserts that the Defendants' application of § 16-5-10(e) violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. *Id.* at 18–20. He also contends that the challenged statute violates the First and Fourth Amendments. *Id.* at 20–21. S.U. requests that the court (1) "[i]ssue a judgment declaring the biological and legal parents of [his] children to be [himself] and an anonymous donor"; (2) "[i]ssue a judgment declaring that the challenged statute and practices violate the protections afforded by the United States Constitution and comparable provisions of the West Virginia Constitution"; (3) order the Defendants "to correct the parentage and names recited on [his] children's birth certificates"; (4) award him nominal damages for violations of his constitutional rights; (5) award him "costs and expenses

in filing this action"; and (6) grant him any other relief the court deems just. *Id.* at 21–22.

This case was referred to Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636. [ECF No. 11]. Magistrate Judge Tinsley submitted his Proposed Findings & Recommendation ("PF&R") and recommended that the court dismiss this action without prejudice *sua sponte* based on the *Rooker-Feldman* abstention doctrine, and deny the pending motions. [ECF No. 25, at 15]. S.U. timely filed objections to the PF&R on March 6, 2023. [ECF No. 27].

## II. Legal Standard

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court is not, however, required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this court need not conduct a *de novo* review "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### III. Discussion

I will first address S.U.'s objections to the magistrate judge's PF&R and then discuss the legal ramifications of S.U.'s burdensome and vexatious conduct.

#### A. Objections to the PF&R

Magistrate Judge Tinsley determined that this action is barred by the *Rooker-Feldman* doctrine "because S.U. indirectly—but fundamentally—seeks to functionally reverse the Mason County Circuit Court's prior rulings through this civil action." [ECF No. 25, at 12]. S.U. contends, however, that the *Rooker-Feldman* doctrine is inapplicable because Defendants' application of § 16-5-10(e) is not a judicial act. [ECF No. 27, at 2]. That is, S.U. claims that his injuries are not caused by any state court decision, but instead are the result of "Defendants' administrative enforcement of its own code to create erroneous birth certificates and Defendants' subsequent refusal to correct [the] children's birth certificates." *Id.* at 3. The court concludes that this matter must be dismissed for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine and the absence of standing. Accordingly, the court adopts the PF&R with a modification to address standing. This modification, however, does not alter the magistrate judge's overall recommendations.

#### 1. *Rooker-Feldman*

The *Rooker-Feldman* doctrine deprives district courts of subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced

10

and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Ernst v. Child & Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997) ("[I]t is improper for federal district courts to exercise jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment."). The doctrine rests on the principle that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). If, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual," then the *Rooker-Feldman* doctrine applies. *Ernst*, 108 F.3d at 491 (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (*Rooker-Feldman* bars district court review "[i]f the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling.").

In the instant case, S.U. seeks, among other relief, an order directing Defendants "to correct the parentage and names recited on [his] children's birth certificates." [ECF No. 1, at 22]. He also requests a "judgment declaring the biological and legal parents of [his] children to be [himself] and an anonymous donor." *Id.* at 21.

Judge Copenhaver previously determined that the *Rooker-Feldman* doctrine applied in *S.U.* "to the extent [S.U.] [was seeking] an order directing the defendant to

11

modify the plaintiff's children's birth certificates." 2021 WL 1153996, at *6. There, the court concluded that the elements of the *Rooker-Feldman* doctrine were met because the issue of whether the children's birth certificates should be amended was previously decided against S.U. in state court, and S.U. sought review of that decision in federal district court. *Id.* at *8–9. The court therefore concluded that S.U. was barred from seeking this form of relief. *Id.* at *9. Interestingly, S.U. asks the court again for essentially the same relief—an order directing Defendants to amend the birth certificates and a judgment declaring S.U. and an anonymous donor the legal parents of the children. [ECF No. 1, at 21–22]. Magistrate Judge Tinsley, relying on *S.U.*, concluded that this court lacks jurisdiction to grant this relief based on the *Rooker-Feldman* doctrine. [ECF No. 25, at 12–15]. The court agrees with the analyses of Judge Copenhaver and Judge Tinsley and concludes that the *Rooker-Feldman* doctrine applies to S.U.'s requests for an order directing Defendants to modify the children's birth certificates and a judgment declaring him and an anonymous donor the children's legal parents. S.U. attempts to escape the doctrine's application by arguing that he is not challenging a state court judgment, but rather Defendants' own decision to apply § 16-5-10(e)'s presumption. Granting the relief requested by S.U., however, would directly contravene the state courts' decisions on parentage and render their orders ineffectual—an outcome S.U. has sought time and time again. Because these forms of relief implicate issues adjudicated in state court, and

12

undermine the final resolution thereof, the *Rooker-Feldman* doctrine bars this court from granting the requested relief.

### 2. Standing

"The standing doctrine is an indispensable expression of the Constitution's limitation on Article III courts' power to adjudicate 'cases and controversies.'" *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 234 (4th Cir. 2005) (citing *Allen v. Wright*, 468 U.S. 737, 750–51 (1984)). Thus, "[s]tanding implicates the court's subject matter jurisdiction." *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019) (citing *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008)). To establish standing, "a plaintiff must show (1) [he] has suffered an 'injury in fact' . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). A plaintiff must "'demonstrate standing for each claim he seeks to press' and 'for each form of relief' sought." *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671, 680 (4th Cir. 2020) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

With respect to S.U.'s request for a declaration that § 16-5-10(e)'s presumption is unconstitutional, Judge Copenhaver previously determined that S.U. lacked standing to seek a declaratory judgment. *S.U.*, 2021 WL 1153996, at *5–6. The court explained that declaratory relief, by itself, could not satisfy the redressability prong,

absent S.U. identifying some concrete relief likely to result from the declaratory judgment. *Id.* at *5. The court concluded that the relief identified by S.U.—future success in state court custody litigation—was "too speculative to satisfy the redressability requirement" for purposes of standing. *Id.* at *6. In the present case, S.U. identifies a different form of relief that will allegedly result from a declaratory judgment: he "would no longer be forced to identify a biological stranger as the biological/legal mother of [his] children nor would [he] be forced to identify [his] children by the names that were given to them by a biological stranger." [ECF No. 1, ¶ 48]. He also states that such relief would "clarify uncertain legal relations between [him] and [his] children." *Id.* ¶ 51.

It is unclear to the court how a declaration that § 16-5-10(e)'s presumption is unconstitutional is likely to produce the relief identified by S.U., whose alleged injury primarily stems from the inclusion of C.J.'s name on the children's birth certificates. A declaratory judgment, by itself, would not change the children's legal parents or names. The Family Court of Mason County previously determined that while C.J. is not biologically related to the three children she *is* their mother, as she "ha[s] been the primary caregiver for the children" and "the children have a close emotional bond to [her]." *S.U.*, 2019 WL 5692550, at *3. The court rejected S.U.'s claim that C.J. was merely a gestational surrogate and found that S.U. and C.J. had been in a long-term relationship, during which time the children were conceived. *Id.* at *4. Declaring the maternal presumption unconstitutional would not affect the family court's reasoning

14

on the issue of parentage or custody, given the family court's conclusion that C.J. was *never* a gestational surrogate but instead an intended parent.

Like in *S.U.*, which was affirmed by the Fourth Circuit,[5] the court concludes that S.U.'s "request for a declaration that § 16-5-10(e)'s presumption is unconstitutional cannot satisfy redressability for purposes of standing." 2021 WL 1153996, at *5.

### B. Prefiling Injunction

"[T]he All Writs Act . . . grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). A district court, however, should not issue a prefiling injunction "absent 'exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions.'" *Id.* at 818 (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). Notably, "'use of such measures against a *pro se* plaintiff should be approached with particular caution' and should 'remain very much the exception to the general rule of free access to the courts.'" *Id.* (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)).

In deciding whether to issue a prefiling injunction, the court must consider all relevant circumstances, including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits;
> (2) whether the party had a good faith basis for pursuing

---

[5] The Fourth Circuit found no reversible error contained in the district court's order. *S.U. v. Wickert*, No. 21-1351, 2022 WL 34139, at *1 (4th Cir. Jan. 4, 2022) (per curiam). The court did, however, modify the order "to reflect that the dismissal [was] without prejudice." *Id.*

>the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.*

Before a court issues a prefiling injunction, it "must afford a litigant notice and an opportunity to be heard." *Id.* at 819. Additionally, once the court determines that an injunction is warranted, it must narrowly tailor the injunction "to fit the specific circumstances at issue." *Id.* at 818.

Ever since the Family Court of Mason County entered its final order on custody and parentage, S.U. has been determined to divest C.J. of custody and strip her of her status as the children's mother. In his effort to do so, S.U. has filed complaints in numerous jurisdictions, including the Southern District of West Virginia, the Northern District of West Virginia, the Circuit Court of Gilmer County, the Circuit Court of Putnam County, the Family Court of Kanawha County, the Court of Common Pleas of Allegheny County, the Westmoreland County Orphans' Court, and the Superior Court of the District of Columbia. *See supra* Part I (collecting cases). Except for S.U.'s short-lived victory in D.C. family court, he has been unsuccessful in these prior proceedings; nevertheless, he persists in litigating claims or issues that have been fully resolved in state court. Indeed, just two years before filing the instant Complaint, S.U. initiated a nearly identical action in this court, complaining of the same injuries and requesting similar relief. *See S.U.*, 2021 WL 1153996, at *1–2. The case was dismissed on March 26, 2021, *id.* at *10, and the Fourth Circuit affirmed

16

the court's judgment on January 4, 2022, *S.U.*, 2022 WL 34139, at *1. Based on S.U.'s history of duplicative filings, the first *Cromer* factor is satisfied.

The second *Cromer* factor is also met. After considering the evidence presented at the final custody hearings, the family court awarded sole legal and physical custody of S.U.'s children to C.J., their mother, and concluded that the children's birth certificates should not be changed. *S.U.*, 2019 WL 5692550, at *1–3. The Supreme Court of Appeals of West Virginia has repeatedly upheld the family court's decision. *See, e.g., id.* at *5. Additionally, other courts, including this court, have continually dismissed S.U.'s claims relating to the custody and parentage of his children. *See, e.g., S.U.*, 2021 WL 1153996, at *10; *Roe*, 2021 WL 1026524, at *4. Despite the courts' rulings, S.U. continues to initiate lawsuits challenging the parentage of his children and requesting that the children's birth certificates be amended. Given his lack of success in any court on the same claims, the court concludes that S.U. did not have a good faith basis for pursing the instant litigation.

Both federal and state courts have been burdened by S.U.'s unsuccessful litigation concerning his children's legal parents. *See, e.g., In re Adoption of E.U.*, 2022 WL 293352, at *2 ("[T]his issue [that C.J. is merely a gestational surrogate] has been rejected multiple times, and this Court simply refuses to entertain it further."). Additionally, the same defendants, such as Mr. Wickert and C.J., have been forced to waste their time, energy, and resources defending against S.U.'s meritless lawsuits. *See, e.g., S.U.*, 2021 WL 1153996, at *1–10 (dismissing S.U.'s complaint filed against

17

Mr. Wickert). The third *Cromer* factor therefore weighs in favor of a prefiling injunction.

The fourth *Cromer* factor is "the adequacy of alternative sanctions." 390 F.3d at 818. Careful consideration of this factor is extremely important. *Id.* If alternative sanctions would be sufficient to deter future frivolous filings, then a prefiling injunction is inappropriate. *Id.*

Multiple state courts have previously determined S.U. to be a vexatious litigant. *See, e.g., S.U. v. C.J.*, No. 21-0322, 2022 WL 3905107, at *2 (W. Va. Aug. 30, 2022); *S.U. v. Cent. Atl. Legal Grp., LLC*, No. 20-1006, 2022 WL 293551, at *2 (W. Va. Feb. 1, 2022); *In re Children of S.U.*, Nos. 20-0515, 20-0516, 20-0612, 20-0710, 2021 W. Va. LEXIS 537, at *6 (W. Va. Oct. 13, 2021). For example, S.U. is "prohibited . . . from filing any self-represented pleadings of any kind related to the . . . children or to [C.J.]" in Mason County Family and Circuit Courts. *S.U.*, 2022 WL 3905107, at *2. Additionally, S.U. has been held in contempt numerous times for his harassing behavior and monetary sanctions have been imposed against him. *See, e.g., In re Children of S.U.*, 2021 W. Va. LEXIS 537, at *6. He remains undeterred. Accordingly, alternative sanctions are not viable, and the fourth *Cromer* factor is satisfied.

All *Cromer* factors are satisfied, and absent a showing of good cause, a prefiling injunction against S.U. is warranted. The court concludes that S.U. should be barred from filing any civil action in this District relating to the custody or parentage of his children, including the information contained on their birth certificates, without first

obtaining leave of court or securing legal counsel. This Order serves as S.U.'s notice that the court is inclined to impose a prefiling injunction against him. S.U. shall show cause within fourteen (14) days from the entry date of this Order as to why the court should not issue the injunction. Failure to respond will result in the issuance of a prefiling injunction.

### IV. Conclusion

For the foregoing reasons, the court adopts the magistrate judge's PF&R [ECF No. 25] as modified herein. The court **ORDERS** that this case is **DISMISSED** and **STRICKEN** from the docket of this court. The parties' pending motions [ECF Nos. 3, 4, 5, 15, 18, 22] are **DENIED as moot**. Plaintiff is **DIRECTED** to **SHOW CAUSE** in writing within **fourteen (14) days** from entry of this Order explaining why a prefiling injunction should not issue.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 30, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE